UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-00510-RJC
(3:21-cr-00168-RJC-DSC-1)

| | |
|---|---|
| LAWRENCE ROBINSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** is before the Court on Petitioner's Pro Se Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [CV Doc. 1][1] and Petitioner's Motion to Expand the Record [CV Doc. 2].

**I.   BACKGROUND**

   **A.   Offense Conduct**

In August 2020, the maintenance crew of an AirBnB rental property in Charlotte, North Carolina, found drugs inside a Louis Vuitton backpack in the hallway between two rental units. [CR Doc. 27 at ¶ 9: Presentence Investigation Report (PSR)]. Police officers found 774.74 grams of fentanyl and 79 grams of marijuana inside the backpack, along with five rolls of vacuum seal bags, a box of sandwich bags, a digital scale, a container of powder commonly used to "cut" narcotics to increase their volume for sale, and two boxes of .45 caliber ammunition. [Id. at ¶ 10].

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:23-cv-00510-RJC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:21-cr-00168-RJC-DSC-1.

Police reviewed video footage from the property's doorbell camera. It showed Petitioner carrying several items from a car into the front rental unit, including the Louis Vuitton backpack, a blue duffel bag, and a black trash bag. [Id. at ¶ 11]. While officers were drafting search warrants for the rental unit and car, they saw Petitioner drive by, recognized him from the doorbell video, and stopped him. [Id. at ¶ 12]. The officers arrested him and searched him, finding $ 4,404, two cell phones, and 8.7 grams of marijuana in a baggie in his pocket. [Id.]. After obtaining search warrants, officers searched the car and rental unit. In the car's center console, they found a Glock model 36 .45 caliber semiautomatic pistol, loaded and with a round in the chamber. [Id. at ¶ 13]. Inside the rental unit, officers found $10,000 in bundled stacks inside the blue duffel bag and a vacuum sealing machine and money counter in the kitchen. [Id.].

In a post-Miranda interview, Petitioner admitted that the pistol belonged to him and that he had obtained it for protection a couple weeks before because people were trying to kill him after his release from jail on drug charges. [Id. at ¶ 14]. Petitioner stated that he believed the fentanyl was cocaine and that a source had given him the drugs after police seized 13 grams of heroin from him in Asheville. [Id.]. Petitioner explained that the source had "fronted" him the drugs so he could sell them and pay back what he owed on the lost heroin. [Id.]. He admitted that the cash, money counter, and vacuum sealer were his. [Id.].

      **B.**      **Criminal Proceedings**

On June 15, 2021, Petitioner was charged in a Bill of Indictment with one count of possession with intent to distribute marijuana and 400 grams or more of a mixture or substance containing fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count One) and one count of carrying a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two). [CR Doc. 1: Bill of Indictment].

2

In September 2021, police arrested Petitioner on these charges after spotting him walking out of an apartment in Asheville, North Carolina. [CR Doc. 27 at ¶ 15]. Petitioner ran away, and they caught him after a short chase. [Id.]. Officers found a Glock model 19 semiautomatic pistol and $4,113 in Petitioner's pocket. [Id.]. After seeing someone moving around in the apartment Petitioner had left, officers conducted a sweep and saw in plain view an assault rifle, marijuana, and a substance they suspected was cocaine or crack cocaine. [Id. at ¶ 16]. A woman in the apartment admitted that she flushed drugs down the toilet. [Id.]. Police obtained a search warrant for the apartment and seized the assault rifle, marijuana, ammunition for the assault rifle and pistol, $10,621 in cash, and suspected drugs from the toilet. [Id.]. Police also found a .22 caliber semiautomatic pistol and marijuana in the woman's purse in the apartment. [Id.].

On March 21, 2022, the parties agreed to a plea agreement pursuant to which Petitioner would plead guilty to Count One of the Indictment and the Government would move to dismiss Count Two. [CR Doc. 18 at ¶¶ 1-2]. The parties agreed to jointly recommend the following under the U.S.S.G.:

    a.    The amount of fentanyl and marijuana that was known to or reasonably foreseeable by the [Petitioner] corresponds to at least 1,000 kilograms but less than 3,000 kilograms of converted drug weight. This converted drug weight corresponds to a **Base Offense Level** of **30** under U.S.S.G. § 2D1.1(a)(5).

    b.    The following apply to the offense(s) to which defendant is pleading guilty:

**Base Offense Level [U.S.S.G. § 2D1.1(a)(5)]:**       **30**

Specific Characteristics:

Firearm Possessed [U.S.S.G. § 2D1.1(b)(1)]    +2

…

    f.    Having fully considered the factors set forth in 18 U.S.C. § 3553(a), the United States and the [Petitioner] jointly recommend a sentence of **156**

3

> **months**, as both parties agree that a sentence of **156 months** is sufficient but not greater than necessary. Should that recommended sentence fall outside the applicable guideline range as calculated by the district court at sentencing, the parties will jointly request a variance to **156 months**. Neither party will otherwise seek a departure or variance.

[CR Doc. 18 at ¶ 8]. Petitioner agreed that there was a factual basis for his guilty plea. [Id. at ¶ 11]. Petitioner, "in exchange for the concessions made by the United States in [the] Plea Agreement, waive[d] all rights to contest the conviction and sentence in any appeal or post-conviction action," except claims of ineffective assistance of counsel and prosecutorial misconduct. [Id. at ¶ 17].

On March 25, 2022, a Magistrate Judge conducted Petitioner's Rule 11 hearing. [3/25/2022 Minute Entry]. At the outset of the plea hearing, the Magistrate advised Petitioner, "if you need to talk to [your attorney] at any point, by all means, please feel free [to] do that. Okay?" Petitioner responded, "Okay." [CR Doc. 32 at 3: Plea Tr.]. Petitioner then testified that he understood he may be prosecuted for perjury if he gave false information under oath. [CR Doc. 32 at 3: Plea Tr.]. The Magistrate reviewed the charge with Petitioner, including the fentanyl quantity alleged in the Indictment, and explained the mandatory minimum sentence of 10 years and maximum sentence of life. [Id. at 4-5]. Petitioner affirmed that he understood the charge and the maximum penalty that may apply. [Id. at 5]. Petitioner testified that he had spoken with his attorney about how the sentencing guidelines might apply to his case and that he understood that he may receive a sentence that is either higher or lower than that called for by the guidelines. [Id. at 6]. Petitioner testified that he understood that if his sentence is more severe than expected or the Court does not accept the sentencing recommendation, he would still be bound by his plea. [Id. at 7]. When again reviewing the charge with Petitioner, the following exchange occurred:

> THE COURT: Do you understand the charge?

4

>           THE DEFENDANT: Yes. Can I ask one question?
>
>           THE COURT: Ask Mr. Corbett.
>
>           (Discussion off the record.)
>
>           THE DEFENDANT: I'm ready.
>
>           THE COURT: Okay. So have you talked to Mr. Corbett about the charge?
>
>           THE DEFENDANT: Yes.
>
>           THE COURT: You understand the charge?
>
>           THE DEFENDANT: Yes.
>
>           THE COURT: Are you guilty of that crime?
>
>           THE DEFENDANT: Yes.

[CR Doc. 32 at 8-9].

      The Government then reviewed the terms of the plea agreement, including the two-level firearm enhancement, the joint recommendation of a 156-month sentence, and the appellate and post-conviction waivers. [Id. at 9-10]. Petitioner testified that he understood those terms and agreed with them. [Id. at 11]. The Magistrate then reviewed the factual basis with the Petitioner. Petitioner testified that he had spoken with his attorney about the factual basis, that he had read it, and that he understood it and agreed with it. [Id. at 12]. Petitioner testified that no one threatened, intimidated, or forced him to enter a guilty plea. [Id.]. Petitioner also testified that he was satisfied with the services of his attorney and that he "did good." [Id. at 13]. Finally, Petitioner testified that he understood all parts of the proceeding and still wished to plead guilty. [Id.]. The Magistrate found that Petitioner's guilty plea was knowing and voluntary and accepted it. [Id. at 14].

Before sentencing, a probation officer prepared a PSR. [CR Doc. 27]. The probation officer recommended a base offense level of 30 based on the converted drug weight, a two-level firearm enhancement, and a three-level reduction for acceptance of responsibility, for a total offense level of 29. [Id. at ¶¶ 21-22, 28-30]. With a criminal history category of III, the guidelines range was 108 to 135 months. However, because the mandatory minimum sentence was 10 years, the guidelines range was 120 to 135 months. [Id. at ¶¶ 56, 101]. The probation officer noted that had the Petitioner been convicted on both counts of the Indictment, he would have been sentenced to a mandatory consecutive sentence of five years on Count Two. [Id. at ¶ 102].

At sentencing, Petitioner affirmed that he had reviewed the PSR, understood it, and had reviewed it with his attorney. [CR Doc. 33 at 3: Sentencing Tr.]. The parties agreed that the correct guidelines range was 120 to 135 months before consideration of departure or variance. [Id. at 4]. The Government argued in favor of a sentence of 156 months, noting that while it was an upward variance, the plea agreement "gives some significant benefit to the [Petitioner] in that it resolved, at least from [the Government's] end of things, potential charges in Asheville that [it] decided not to pursue that would have included an additional 924(c)." [Id. at 6]. The Government asserted that Petitioner is "a prolific, armed drug trafficker," which, along with his criminal history which did not capture "a number of convictions that are too old … despite his young age," "weighs in favor of the 156-month sentence." [Id. at 7]. The Court sentenced Petitioner to a term of imprisonment of 156 months. [Id. at 8]. The Court noted that "in light of the charges not pursued with respect to the underlying offense and the arrest of [Petitioner], the number of weapons and large amounts of drugs," the sentence appears "sufficient, but not greater than necessary." [Id. at 8-9]. The Court also reflected on Petitioner's lengthy criminal history, including his 12 state court zero-point trafficking convictions, which "is very serious, very substantial, and justifies the lengthy

6

Case 3:23-cv-00510-RJC   Document 7   Filed 02/02/24   Page 6 of 16

sentence." [Id. at 9]. At the conclusion of the sentencing hearing, the Court explained to Petitioner:

> Any notice of appeal must be filed within 14 days from the entry of judgment…. And if you request, the Clerk of Court will prepare and file a notice of appeal on your behalf.
>
> The Court recommends you talk to your attorney about these appeal rights, and especially about the impact on these rights of any waiver-of-appeal provision in your plea agreement, but do you understand these rights as I have just explained them to you? Do you understand your appeal rights?
>
> THE DEFENDANT: Yes, sir.

[Id. at 11]. Judgment on Petitioner's conviction was entered on August 19, 2022. [CR Doc. 29: Judgment]. Petitioner did not file a direct appeal.

### C. Petitioner's Motion to Vacate

On August 11, 2023, Petitioner filed a Pro Se Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. [CV Doc. 1]. Petitioner argues (1) that his guilty plea was not knowingly and voluntarily made due to ineffective assistance of counsel and (2) that his attorney was ineffective for failure to consult with him regarding his appeal rights.[2] [Id. at 4-5]. For relief, Petitioner asks the Court, on his first ground for relief, to vacate his conviction and sentence and, on his second, to enter an amended criminal judgment from which Petitioner can timely appeal. [Id. at 12].

## II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence,

---

[2] Petitioner also moves to expand the record pursuant to Rule 7 of the Rules Governing Section 2255 Proceedings to include a Declaration he submitted therewith. [CV Doc. 2; see CV Doc. 1-2]. The Court will grant this motion.

7

or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III.  DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.  See U.S. CONST. amend. VI.  To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).  Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"  Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).  Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice."  Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).

To establish prejudice, the petitioner must demonstrate there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. It is not sufficient to show the mere "'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1994) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). The petitioner's "subjective preferences" are not dispositive, but rather the test is "whether proceeding to trial would have been objectively reasonable in light of all the facts," United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012), and whether the petitioner has shown that there is "contemporaneous evidence" supporting his expressed preferences, Lee v. United States, 137 S.Ct. 1958, 1967 (2017).

In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11

9

colloquy is conclusively established, and a district court should dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). Moreover, courts "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Lee v. United States, 137 S. Ct. 1958, 1967 (2017). Rather, the court should look to contemporaneous evidence of his desire to pursue a particular course of action. Id.

Finally, counsel must file a notice of appeal when instructed to do so by the client. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). Even if the client does not expressly request an appeal, counsel must consult with the client when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal); or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. Although not determinative, a highly relevant factor is whether the conviction follows a trial or a guilty plea because a plea reduces the scope of potentially appealable

10

Case 3:23-cv-00510-RJC   Document 7   Filed 02/02/24   Page 10 of 16

issues and may indicate that the defendant seeks to end the judicial proceedings. Id. "Though there is no per-se rule, a lawyer who fails to consult with a defendant about an appeal following a jury trial almost always acts unreasonably." Bostick v. Stevenson, 589 F.3d 160, 167 (4th Cir. 2009) (citation omitted). A defendant establishes prejudice by demonstrating a reasonable probability that he would have filed a timely appeal "'but for' counsel's failure to file or consult." Gordon v. Braxton, 780 F.3d 196, 200 (4th Cir. 2015) (quoting Flores-Ortega, 528 U.S. at 484). "This analysis overlaps with the deficient performance analysis to the extent that petitioner may satisfy the prejudice prong by showing that there were non-frivolous grounds for appeal or by showing that petitioner was so determined to appeal that consultation would not have dissuaded that petitioner from doing so." Bostick, 589 F.3d at 168 (citing Flores-Ortega, 528 U.S. at 485-86).

1. **Guilty Plea**

Petitioner claims that his attorney was deficient for pressuring Petitioner into accepting the plea offer and to continue with the plea hearing "despite [Petitioner's] expressing his confusion concerning the plea." [CV Doc. 1-1 at 7]. Petitioner alleges that when his attorney brought him the plea offer, Petitioner asked "for an opportunity to read [it] and think about it." [CV Doc. 1-2 at ¶ 3: Petitioner Dec.]. Petitioner further alleges that his attorney told him that "if [he] did not sign the plea agreement during his visit, then [Petitioner] would lose the opportunity and be forced to go to trial." [Id.]. Petitioner claims that, "[h]ad he been afforded the opportunity to study the plea agreement" and "accurately advised concerning the correlation between the guidelines range triggered by [his] plea and the agreed sentence of imprisonment … [he] would not have accepted the plea offer and would have exercised [his] right to trial by jury." [Id. at ¶ 4].

11

Petitioner argues that "[m]inimally competent counsel would have also recognized that the joint sentencing recommendation" of 156 months' imprisonment "was substantially greater than the guidelines range triggered by the offense of potential conviction." [Id. at 8]. Petitioner asserts that his attorney "was constitutionally required to halt the proceeding and take the time necessary to ensure that [Petitioner] was entering a knowing, intelligent and voluntary plea," when Petitioner "wanted to ask a question during the Rule 11 colloquy." [Id. at 9-10].

Petitioner's sworn statements at his Rule 11 hearing, which are conclusively established absent extraordinary circumstances, establish that his plea was knowing and voluntary. The Magistrate advised Petitioner that he should "feel free to" to talk to his attorney "at any point" during the hearing." After the Court reviewed the charge with Petitioner, Petitioner testified that he understood the charge. Petitioner also testified that he had spoken with his attorney about how the sentencing guidelines might apply to his case and that he understood that he may receive a sentence that is either higher or lower than that called for by the guidelines. Petitioner testified that he understood he would be bound by his plea even if his sentence was more severe than expected or the Court did not accept the sentencing recommendation. When the Court again reviewed the charge with Petitioner, Petitioner asked if he could ask "one question." The Court directed him to speak to his attorney and, after a discussion off the record, Petitioner told the Court that he had spoken with his attorney regarding the charge and was "ready." After the Government reviewed the terms of the plea agreement, including the two-level firearm enhancement, the joint recommendation of a 156-month sentence, and the appellate and post-conviction waivers, Petitioner testified that he understood the terms and agreed with them. Petitioner testified that no one threatened, intimidated, or forced him to enter a guilty plea and that he was satisfied with the services of his attorney, who "did good." Finally, Petitioner testified that he understood all parts

12

of the proceeding and still wished to plead guilty. Then, five months later, at sentencing, Petitioner raised no objection to the voluntariness of his plea.

Petitioner now wants the Court to believe, contrary to his sworn plea hearing testimony, that he was "pressured" into signing the plea agreement and continuing with the plea hearing and that, if he had been given longer to review the plea offer, he would have rejected it and proceeded to trial. Absent extraordinary circumstances, which Petitioner has not shown, the Court must rely on Petitioner's sworn statements during his plea colloquy, Lemaster, 403 F.3d at 221-22, and Petitioner's allegations here directly contradict his sworn testimony. Moreover, Petitioner's claim that he would have rejected the plea offer and proceeded to trial is objectively unreasonable. Petitioner pleaded guilty pursuant to a highly favorable plea agreement, which required the Government to drop the § 924(c) charge and incident to which the Government agreed not to pursue charges related to Petitioner's arrest, including possession of more drugs, a pistol, and an assault rifle. Rejecting the plea and proceeding to trial would have significantly increased Petitioner's sentencing exposure, including at least one mandatory consecutive five-year sentence, which would have yielded a sentencing range of 180 to 195 years' imprisonment. The Court, therefore, will dismiss this claim because it "necessarily relies on allegations that contradict" his sworn statements. Lemaster, 403 F.3d at 222.

Petitioner also claims that his plea was not knowing and voluntary because his attorney recommended that he agree to a sentence that exceeded the guideline range for the offense. This allegation contradicts Petitioner's sworn statements that he understood the terms of his plea agreement and, for the same reasons as above, does not undermine the voluntary and knowing nature of his plea. And Petitioner's plea agreement contemplated that the 156-month recommended sentence may "fall outside the applicable guideline range as calculated by the district court at

13

sentencing" and, if it did, Petitioner agreed to request the upward variance. [CR Doc. 18 at ¶ 8(f)]. This claim lacks merit in any event. As noted, Petitioner was greatly benefitted by his plea. Given the mandatory 10-year minimum on the drug charge, Petitioner's minimum sentence had he been convicted at trial would have been 15 years, or 180 months. The plea agreement reduced that minimum sentence by 24 months. As such, Petitioner's attorney's recommendation to accept the plea offer was well within the bounds of reasonable professional assistance. See Strickland, 466 U.S. at 687-88.

In sum, Petitioner has failed to show ineffective assistance of counsel relative to his guilty plea. See id. The Court, therefore, will dismiss this claim.

### 2. Consultation Regarding Appeal

Petitioner claims that, after sentencing, he told his attorney that "[he] did not think [he] should be sentenced to 156 months' imprisonment" and that his attorney "did not discuss the potential benefits of appealing the sentence or meet with [him] to ascertain [his] wishes concerning an appeal." [CV Doc. 1-2 at ¶ 6]. Petitioner further claims that, had his attorney met with him after sentencing, "explained the potential benefits of appealing the sentence imposed and [his] right to do so, [Petitioner] would have instructed him to file an appeal on [his] behalf." [Id.]. Petitioner also alleges that, after sentencing, his attorney would not take his calls and "closed the doors to the appellate court in [his] face by refusing to communicate with [him]." [Id. at ¶ 7].

Petitioner has not shown ineffective assistance based on his attorney's alleged failure to consult with him regarding an appeal. As noted, Petitioner's plea agreement provided significant benefit to Petitioner. He avoided mandatory consecutive sentences on multiple gun charges. He waived his right to appeal. While Petitioner claims that he would have instructed his attorney to file an appeal had his attorney consulted with him regarding the "potential benefits of appealing

14

the sentence," Petitioner fails to present any non-frivolous grounds for an appeal or what those "benefits" would have been. In short, Petitioner has failed to show that a rational defendant in his position would have wanted to appeal or that he reasonably demonstrated to his attorney that he was interested in appealing. See Flores-Ortega, 528 U.S. at 480. Moreover, Petitioner's allegation that he told his attorney after sentencing that he did not believe he should have been sentenced to 156 months' imprisonment is insufficient to give his attorney "reason to think" that Petitioner wanted to or had non-frivolous grounds to appeal. Id. That Petitioner disagreed with his sentence is not grounds for an appeal and he was sentenced to the exact term to which he agreed, in any event. Also, the Court instructed Petitioner that he had the right to appeal and that the Clerk would prepare and file a notice of appeal for him if requested. Petitioner affirmed that he understood those rights. As such, Petitioner's claim that his attorney declining his calls "closed the doors to the appellate court" is simply untrue. Accordingly, Petitioner's *post hoc* allegations fail to establish that he would have filed a timely appeal but for his attorney's alleged failure to consult. See Gordon, 780 F.3d at 200. The Court, therefore, will dismiss this claim.

Because Petitioner has also failed to show ineffective assistance of counsel as to either ground for relief, the Court will deny and dismiss his motion to vacate.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 Motion to Vacate with prejudice.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

## **ORDER**

**IT IS, THEREFORE, ORDERED** Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Expand the Record [Doc. 2] is **GRANTED** in accordance with the terms of this Order.

Signed: February 1, 2024

Robert J. Conrad, Jr.
United States District Judge